MARGARET BROKER v. THE KOLYNOS COMPANY ET AL.

SUPERIOR COURT    NEW HAVEN COUNTY    FILE NO. 66074

Memorandum filed September 12, 1946.

*Edward J. Brennan,* of New Haven, for the Plaintiff.

*Martin E. Gormley,* of New Haven, for the Defendants.

CORNELL, J.   The reasons of appeal take no exception to the subordinate facts disclosed by the finding and concern themselves only with the ultimate conclusion upon which the award is based, drawn from such facts.   Under such circumstances, the transcript of the evidence submitted to the commissioner is irrelevant.   *Klautka* v. *Stanley Works,* 100 Conn. 345, 347.

Accordingly, its content is not considered. The fact of the plaintiff's dependency upon the earnings of her deceased minor son, who admittedly died from injuries which arose out of and occurred in the course of his employment with the named defendant, is conceded. The claim made by defendants is that the finding errs with respect to the extent of such dependency, as reflected in the award made, namely, in the sum of $12.60 per week based upon average weekly earnings of $25.10. As the issue is formulated, the question on this appeal is whether the conclusion reached by the commissioner displays that it is unreasonable or illegal in the light of the subordinate facts. These, condensed, are as follows:

On August 9, 1943, the deceased, John Broker, while working for defendant The Kolynos Company sustained injuries that arose out of and occurred in the course of his employment. As a result of these he died on August 14, 1943. He was then in his seventeenth year and living with plaintiff, his mother, two sisters and two brothers, all comprising one household. The brothers referred to were James, who was fourteen, and Robert, eight years old, respectively. One of his sisters, Catherine, had attained the age of eleven years; the other the finding does not name and, while describing her as older than the deceased, does not otherwise indicate her age. Another brother, Edward, aged twenty-one, had been in the armed forces of the United States for some time, while a third sister, Shirley, nineteen years old, was an inmate of an institution and had been for an unnamed period prior thereto. The deceased's father had died in 1936, and before his employment with defendant the deceased had worked for Sargent & Company, the Bond Clothing Company and S. H. Moore Company. While engaged by these concerns, as well as during his last employment with defendant, the deceased turned over to his widowed mother all of his earnings.

For a time up to July 22, 1943, plaintiff received an allotment from Edward's pay with the armed forces of $37.50 per month and was also, herself, gainfully employed, with earnings averaging between $29 and $33 per week, subject, however, to the usual payroll deductions. The deceased's elder sister was employed and paid plaintiff $10 per week. Whether this was her entire earnings or represented a payment for board and lodging, and if so the cost of furnishing the latter, are not related. In addition to the necessary expenditures from the plain-

tiff's total receipts for the support of the family living with her during this period, plaintiff paid to the institution where her daughter Shirley was, and is, confined, the sum of $21.66 per month. During the time referred to, plaintiff's income per month from the sources detailed, inclusive of her own earnings, totaled approximately $298.25, against outgo (inclusive of contributions toward Shirley's care) for necessaries of about $249.16 per month. Previous to July 22, 1943, plaintiff's health became impaired and on medical advice she relinquished her employment, in consequence of which the income from her own earnings thereupon ceased; the sum of $37.50 per month from Edward's allotment with the armed forces terminated on August 1, 1943, with the result that plaintiff's income from all sources at the time that John sustained his fatal injury on August 9, 1943, was the latter's contributions and the sum of $10 per week from the deceased's elder sister, or a total of about $140.75 per month as against essential expenditures found by the commissioner of approximately $250 per month.

With respect to the contributions made while the deceased was employed by the named defendant, the specific finding is as follows: "The decedent had always given his mother his entire wages each week . . . The claimant gave back to the decedent odd sums of money as he needed them which sums at her best estimate amounted to not over one-third of his earnings and she kept for the support of the family an average of approximately $20 each week from his earnings." It is defendants' contention that on this statement it was incumbent on the commissioner to find that the amount of the deceased's weekly contributions to plaintiff was the sum of $20 per week. The fact that plaintiff supplied the deceased with money from time to time while he was turning his entire weekly earnings over to her does not collide with the commissioner's conclusion that the total of the deceased's weekly contributions was his entire earnings of $25.10 per week but, on the contrary, is consistent with it. Plaintiff as the surviving parent of her deceased minor son sustained the legal obligation of supporting and caring for him and, correlatively, was entitled to all of his earnings. The "odd sums" which she gave him "as he needed them," in the absence of anything to the contrary in the finding, are referable to plaintiff's performance of her duty to maintain him. *Draus* v. *International Silver Co.*, 105 Conn. 415, 422. The test of the measure of dependency, as well as that of the fact of dependency, upon a minor child by a parent is

not the net financial benefit to him or her arrived at by deducting from the earnings turned over the cost of maintaining him and furnishing him with reasonable amounts of spending money, but the average weekly sum from or constituting his earnings actually paid over to the parent by the child. *Draus* v. *International Silver Co.,* supra. Here, as in all cases of dependency, the test is whether the earnings contributed were relied on, and there was a reasonable expectation that they would be continued to be, as affording or contributing to plaintiff's means of support according to her class and condition in life. *O'Shea* v. *Remington-Rand, Inc.,* 120 Conn. 35, 38, and cases cited. Even if the finding could be read to support the contention (which, however, is not advanced) that plaintiff supplied more money to the deceased from the family fund made up of his earnings and his elder sister's payments of $10 per week than might be thought provident considering plaintiff's economic plight, that could not alter the essential fact that the amount turned over to plaintiff was his entire weekly earnings and at the time he received his fatal hurts plaintiff was dependant on all of it for her own and her children's support inclusive of that of the deceased.

Since it does not appear that the commissioner's conclusion in the respect assailed is offensive to reason or violative or in contravention of any rule or principle of law, it must stand.

The question whether the plaintiff is to be classified as a "whole" or "partial" dependant is academic, in view of the circumstance that it appears that the payments which plaintiff is entitled to have are neither more than $30 per week nor more than the sum actually contributed by the deceased. In such a situation the compensation to be paid is at the same rate for a partial as for a total dependant, namely "a weekly compensation equal to half of the average weekly earnings of the deceased at the time of the injury." General Statutes, Sup. 1943, § 696g (b) and (c).

The finding and award are sustained; the appeal dismissed. Judgment accordingly.